# FRANK M. LAHR v. CITY OF ST. CLOUD.[1]

March 9, 1956.

No. 36,695.

*Phillips & Donohue,* for relator.

*Miles Lord,* Attorney General, and *Robert Latz,* Special Assistant Attorney General, for respondent Industrial Commission.

DELL, CHIEF JUSTICE.

Certiorari to review a decision of the Industrial Commission which affirmed the findings of its referee awarding the employee compensation for total disability and further ordering that the employer pay $816.29 to the Industrial Commission for the benefit of the special compensation fund.

Frank M. Lahr, hereinafter referred to as the employee, was employed by the city of St. Cloud as a janitor. In emptying a

---

[1]Reported in 76 N. W. (2d) 119.

bucket of debris, he apparently slipped and the bucket dropped on his left foot. An infection developed which eventually resulted in the amputation of both legs just above the knees, and he petitioned the Industrial Commission for compensation. The matter was duly heard before a referee of the commission who found that the employee sustained an injury arising out of and in the course of his employment for the city of St. Cloud, hereinafter referred to as the employer. He further found that as a result of such injury the employee became temporarily and totally disabled for a period of 56 weeks and three days and awarded the employee $1,746.98 for such temporary total disability. The referee also found:

"VI.

"That as a further result of said personal injury the employe has sustained the loss by amputation of both legs other than so close to the hips that no effective artificial members can be used.

"VII.

"That as a further result of said personal injury the employe is permanently and totally disabled."

and awarded the employee the sum of $30.92 per week during such permanent and total disability. There was no express finding of permanent *partial* disability. Certain other medical allowances were ordered. Finally, the referee ordered that the employer pay the sum of $816.29 to the Industrial Commission for the benefit of the special compensation fund.

The employer appealed to the Industrial Commission which affirmed the findings of fact and determination of the referee.

The only question presented on this appeal is the validity of that part of the order requiring the employer to pay a lump sum into the special compensation fund.[2] The applicable portion of the

[2]The notice of appeal to the Industrial Commission also raised the question of whether the finding of permanent and total disability was sustained by the evidence. Later the employer concluded that this presented an issue of fact and expressly waived and withdrew this issue in its brief to the commission.

statute creating the special compensation fund provides (M. S. A. 176.13[b]):

"This fund shall be created for such purposes in the following manner:

\* \* \* \* \*

"(2) When an employee shall suffer a compensable injury, which results in permanent partial disability, and which injury entitles him to compensation pursuant to section 176.101, subdivision 3, (1-42 inclusive), the employer, or his insurer, shall, in addition to the compensation provided for in subdivision 3, (1-42 inclusive), pay to the industrial commission, for the benefit of the special compensation fund, a lump sum, without interest deductions, equal to six percent of the total compensation to which the employee is entitled under said subdivision 3 for the permanent partial disability, this sum to be paid to the industrial commission as soon as the total amount of the permanent partial disability payable for the particular injury is determined by the industrial commission, or arrived at by the agreement of the parties and such amount is approved by the industrial commission."

Section 176.101, subd. 3, is titled "Permanent partial disability" and refers exclusively to such injuries.

The employer contends that the statute requires a payment into the fund only if the injury results in permanent *partial* disability and an *award* of compensation is made therefor. Since there was no finding or award by the referee based on such a disability, but only an express finding and award based on a permanent and *total* disability, it is argued that the order requiring contribution to the special compensation fund is contrary to law.

The commission, on the other hand, points out that the statute requires only that the employee be *entitled* to permanent partial disability to give rise to the employer's obligation to contribute to the fund. It contends that finding VI, above set forth, and the order requiring payment to the fund are equivalent to, or necessarily imply, a finding of permanent partial disability entitling the employee to an award therefor and thus requiring the employer to con-

tribute to the fund. It further contends that the express finding of permanent and total disability, rather than weakening this contention, strengthens it, since total disability necessarily includes partial disability.[3]

It is true that finding VI is clearly couched in the language of the permanent partial disability provision.[4] Furthermore, this finding in itself would not support the ultimate award of permanent total disability.[5] It might also be conceded that, theoretically speaking, every total disability includes a partial disability.[6] This does not mean, however, that such an implied or necessarily included finding creates the "permanent partial disability" situation required by the statute before the employer is obligated to contribute to the fund. Even if the commission's position were strengthened by the addition of an express finding of permanent partial disability, its contention could not prevail under our interpretation of the statute.

From a consideration of § 176.13 in its entirety, it is our opinion that an *award* of permanent partial disability is necessary in order to create the obligation to contribute to the special compensation fund. While the statute does not expressly use the term "award," a careful reading of the section, with a thorough consideration of the alternative constructions suggested, leaves only one reasonable meaning.

---

[3] It is not clear whether the position of the commission is that all permanent and total disability awards include permanent and partial disabilities and thus require contributions, or whether this is true only in certain cases, including the one now before us. It would appear that a great deal of its argument would apply to all permanent and total disability awards.

[4] See, § 176.101, subd. 3(30).

[5] See, § 176.101, subd. 5. It should be pointed out, however, that such a factual situation, if coupled with additional facts which render the employee totally incapacitated from working at an occupation which brings him an income, warrants an ultimate award of permanent *total* disability. Here it must be assumed that the evidence was sufficient to support and sustain the award since that issue has not been contested on this appeal.

[6] If such was the intention of the referee, better practice would seem to indicate the use of an express finding to clarify the matter.

The section does, on two occasions, speak of the employee being "entitled" to permanent partial disability compensation. If the word "entitle" were to be taken out of context, the commission's argument might be tenable. However, it appears to us that the word was chosen over such words as "awarded" or "paid" to prevent the interpretation that the compensation must be actually disbursed before the obligation to contribute to the fund arises, or that only the actual amount disbursed to the employee should be used as the base from which to compute the amount due the fund. The amount paid to an employee might well be something less than the amount that he is entitled to.

The section also speaks of the payment to the fund being "in addition to the compensation provided for in subdivision 3," which obviously contemplates an award under subd. 3, the permanent partial disability provision. The section goes on to speak of the total amount of permanent partial disability being "determined" by the commission. While it is true that the amount of the award could be "determined" and not "awarded," such an interpretation would be unrealistic.

But the strongest argument for the construction advanced by the employer can be found in the legislature's restrictive use of the phrase "permanent partial disability." This phrase is used widely in the workmen's compensation act and is a term readily distinguishable from the phrase "permanent total disability." We cannot believe that it was the intention of the legislature to use the phrase "permanent partial disability" to include both permanent partial and permanent total disability. Yet to accept the commission's argument, we would be required to reach that conclusion. Rather, we are compelled to conclude that, by the use of this restrictive phrase, the legislature intended to place a definite and obvious limitation on the obligation to contribute to the fund, namely, to occasions where the employee suffers only a permanent partial disability. By the simple use of a phrase such as "permanent disability" or "permanent partial and permanent total disability" the legislature could easily have enlarged the field of contributors. The obvious limitation in-

cluded in the act cannot be circumvented by a practice of implying, or even specifically finding, that a permanent total disability includes a permanent partial disability for the purpose of requiring a contribution to the special compensation fund.

The commission urges for our consideration certain administrative practices in support of their position, practices concerning which no evidence was introduced and which were not proved or established below. Even if we could properly take judicial notice of such matters,[7] the interpretation urged on us by such claimed practical construction could only result in an extension or modification of the provisions of the statute, which is not obviated by the statute's subsequent reenactment.[8] Similarly, the regulations of the commission are not controlling if they extend the statute or modify its provisions.[9]

Although an examination of the history of § 176.13, for the purpose of ascertaining legislative intent, is unnecessary in view of our conclusion that such intent is apparent from the language of the statute itself,[10] the history does reveal a possible reason for restricting the requirement of contribution to the employers of employees suffering permanent partial disability. The first paragraph of § 176.13 contains the so-called "second injury" provision, which relieves the employers of previously disabled employees from incur-

[7]It is doubtful whether the unrecorded cases relied upon by the commission are subject to judicial notice. See, Hanson v. Hayes, 225 Minn. 48, 51 to 52, 29 N. W. (2d) 473, 475; State ex rel. Gillis v. Goodrich, 195 Minn. 644, 649, 264 N. W. 234, 237.

[8]See, e.g., Mattson v. Flynn, 216 Minn. 354, 363, 13 N. W. (2d) 11, 16; United States v. City Nat. Bank of Duluth (D. Minn.) 31 F. Supp. 530, 534 to 535; 24 Minn. L. Rev. 129; 17 Dunnell, Dig. (3 ed.) § 8952.

[9]Rule 20 of the Rules of Practice before the Industrial Commission provides for payment to the special compensation fund in cases of awards involving permanent total or partial loss of a member or members.

[10]While the so-called "plain meaning rule" has been limited in its importance in some jurisdictions (see, e.g., Association of Employees v. Westinghouse Elec. Corp. 348 U. S. 437, 443 to 444, 75 S. Ct. 489, 491 to 492, 99 L. ed. 510, 515 to 516), it still prevails in this state. See, M. S. A. 645.16; Minneapolis-St. Paul Sanitary Dist. v. City of St. Paul, 240 Minn. 434, 437, 61 N. W. (2d) 533, 535 to 536, and cases cited.

ring the risk of having to pay permanent total disability benefits for what would ordinarily be only permanent partial disability.[11] The special compensation fund was created to supplement the partial benefits awarded such employees.[12] Of course, not all employers paying permanent partial disability awards benefit from the "second injury" clause and the special compensation fund.[13] However, the legislature might well have reasoned that the fund should be maintained primarily by employers whose employees could realize benefits from it by virtue of the nature of their injuries and that those employers whose employees could derive no benefits from the fund and who were already burdened with heavier payments, namely, employers subject to liability for permanent total disability, should not be compelled to make any contributions to the fund.

Accordingly, that part of the order directing the employer to pay $816.29 to the commission for the benefit of the special compensation fund is reversed.

Reversed.

---

[11]The statute provides: "If an employee receives an injury which of itself would cause only permanent partial disability, but which, combined with a previous disability, does in fact cause permanent total disability, the employer shall only be liable for the permanent partial disability caused by the subsequent injury."

For a discussion of the historical significance of the "second injury" provisions and the special compensation funds, see Lawson v. Suwannee Fruit & Steamship Co. 336 U. S. 198, 69 S. Ct. 503, 93 L. ed. 611. See, also, Riesenfeld and Maxwell, Modern Social Legislation, pp. 314 to 315.

[12]At certain periods following the creation of the fund other classes were entitled to benefits from it. See, e.g., L. 1941, c. 384, § 1; L. 1945, c. 106. But since 1951 only the "second injury" cases are entitled to allowances from the fund.

[13]In addition to employers of an employee permanently partially disabled, employers of an employee who died under compensable circumstances, but who left no survivors entitled to compensation, have always been compelled to contribute to the fund. M. S. A. 176.13(b)(1). While at certain times other employers have also been required to contribute, the act as presently constituted requires contributions only from the two classes mentioned.