STATE of Minnesota, Appellant,

v.

Daniel Thomas KIMINSKI, Respondent.

No. C1–91–715.

Court of Appeals of Minnesota.

Aug. 20, 1991.

Review Denied Oct. 11, 1991.

RANDALL, Judge.

The State of Minnesota appeals from the trial court's pretrial dismissal of two counts of state lottery fraud brought against respondent Daniel T. Kiminski. Respondent allegedly stole "instant win" lottery tickets and redeemed the winning tickets for approximately $69. Appellant contends the trial court erred when it construed Minn.Stat. § 609.651, subd. 1(4) (1990) as being inapplicable to the knowing redemption of stolen lottery tickets. We reverse and remand for further proceedings.

## FACTS

Respondent was charged on December 28, 1990, with two counts of state lottery fraud in violation of Minn.Stat. § 609.651, subd. 1(4) (1990). The omnibus hearing was held on January 23, 1991. The pertinent facts were not in dispute. The trial court was asked to conclude from the facts whether lottery fraud or the general theft statute best fit respondent's conduct.

Respondent argued that both counts of the complaint should be dismissed because the counts of the complaint failed to state violations of Minn.Stat. § 609.651, subd. 1(4). Respondent argued the conduct as alleged should constitute an offense under the general theft statute, Minn.Stat. § 609.52 (1990).

The trial court agreed with respondent and issued an omnibus order dismissing both counts of state lottery fraud. The trial court's order used the phrase "lacking probable cause." It found the legislature did not intend to make the conduct of respondent a crime under Minn.Stat. § 609.-651, subd. 1(4). The State of Minnesota appeals pursuant to Minn.R.Crim.P. 28.04, subd. 1(1).

The charges against respondent stem from the early morning hours of December 20, 1990, when 33 Minnesota state lottery instant win tickets were stolen from the Junction Oasis Truck Stop in Carlton Coun-

Hubert H. Humphrey, III, Atty. Gen., Kevin P. Staunton, Spec. Asst. Atty. Gen., St. Paul, Marvin Ketola, Carlton County Atty., Leslie E. Beiers, Asst. County Atty., Carlton, appellant.

John M. Stuart, State Public Defender, Lawrence Hammerling, Asst. Public Defender, Cathryn Middlebrook, Asst. Public Defender, Minneapolis, respondent.

Considered and decided by RANDALL, P.J., and HUSPENI and THOREEN*, JJ.

* Retired judge of the district court, acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

ty. The tickets were taken from the gas station adjacent to the truck stop's restaurant. Kenneth Newsum and Damon Swenson were the employees working the shift from 11:00 p.m. December 19, 1990 to 7:00 a.m. December 20, 1990. One or both employees were at the counter in the gasoline station at all times during the shift except for one brief period around 4:00 a.m.

Just before 4:00 a.m., respondent and Dan Haganah came into the gas station from the restaurant. They purchased a few instant win lottery tickets and returned to the restaurant. Both employees joined them in the restaurant: Swenson sat in a booth with the two men, and Newsum stood in the doorway between the restaurant and gas station. Swenson then went to the rear of the station to retrieve cleaning supplies. When he came back into the gas station, respondent and Dan Haganah were standing at the unattended counter near the lottery tickets. As Swenson entered, Newsum returned to the gas station from the restaurant. Swenson sold the two men a few more lottery tickets, and then respondent and Haganah left. As Newsum and Swenson were counting the lottery tickets prior to checking out of their shift, they realized more tickets were gone than had been sold. A supervisor reported the missing tickets to the Carlton County sheriff's department.

In the investigation, Haganah was interviewed by a deputy sheriff. Haganah told the officer that respondent reached behind the counter while the employees were gone and took a handful of lottery tickets. Respondent was staying with Haganah, and they returned to Haganah's home where they opened the tickets to look for winners. Respondent kept all the tickets with winning payoff symbols.

Respondent admitted stealing the tickets and presenting the winning tickets for payment. Respondent produced 22 of the tickets. When asked where the remaining 11 tickets were, respondent said he cashed them in for approximately $25.

After further investigation, it was clear respondent received more than $25 from winning tickets. Respondent agreed to come to the Law Enforcement Center to speak further with the officer. At this second interview, respondent admitted he cashed in the stolen winning tickets for $69. He admitted to receiving $56 from the "Little Store" in Carlton and $11 from the "Little Store" in Cloquet. He could not remember where he had cashed the last $2 winner.

The investigating officer recovered 32 of the 33 stolen lottery tickets. The stolen tickets had been redeemed, were signed on the back by respondent, and witnesses recognized respondent as the person who had redeemed the tickets.

The complaint against respondent alleged two violations of Minn.Stat. § 609.-651, subd. 1(4). The relevant statutory provision provides:

A person is guilty of a felony and may be sentenced under subdivision 4 if the person does any of the following with intent to defraud the state lottery:

(1) alters or counterfeits a state lottery ticket;

(2) knowingly presents an altered or counterfeited state lottery for payment;

(3) knowingly transfers an altered or counterfeited state lottery ticket to another person; or

(4) *otherwise claims a lottery prize by means of fraud, deceit, or misrepresentation.*

*Id.* (emphasis added).

The two counts of the complaint provided:

*COUNT 1:* [Respondent] Did wrongfully, unlawfully, intentionally and feloniously, on or about the 21st day of December, 1990, in the City of Carlton, claim a lottery prize by means of fraud, deceit and misrepresentation.

*COUNT 2:* [Respondent] Did wrongfully, unlawfully, intentionally and feloniously, on or about the 21st day of December, 1990, in the City of Cloquet, claim a lottery prize by means of fraud, deceit and misrepresentation.

The trial court, following the omnibus hearing, dismissed the two counts as lack-

ing probable cause to show a violation of Minn.Stat. § 609.651, subd. 1(4). The trial court's memorandum states:

[Respondent] admitted to Sergeant Marvin Durkee that he took some scratch-off-type lottery tickets from a convenience store. The state charged him with committing felonies under MSA 609.651, subd. 1(4), which makes presenting false information regarding a lottery ticket a felony. The state argues that the charge is appropriate because the legislature was silent as to the theft of a small lottery prize and that the felony provisions dealing with state lottery fraud apply. Defendant argues that the legislature's intent was to have the felony provisions deal with penalties for defrauding the lottery system and that the general theft statute should apply for the mere theft of tickets.

In interpreting statutes, the Court must determine the legislature's intent. *Mankato Citizens Telephone Company vs. Commissioner of Taxation*, 146 [145] N.W.2d 313. The Court has reviewed the tapes of the Senate Judiciary Committee's discussions of the statute in question, which discussions were held prior to the passage of the statute. They indicate that the members of the committee were concerned with efforts to defraud the lottery system rather than with the theft of lottery tickets. Senate Counsel made it clear that the penalties for lottery fraud were modeled after those imposed for aggravated forgery.

In determining the legislature's intent, the Court should presume that the legislature did not intend an absurd or unreasonable result. *Ramsey County vs. Lake Henry Township*, 47 N.W.2d 554. Clearly, the sanctions for petty theft should not be as severe as those for aggravated forgery. Had the defendant stolen the proceeds (approximately $62) from an individual who had purchased the tickets and claimed the prize, he would be guilty of theft. The legislature could not have possibly intended to declare such an act a felony under the lottery fraud statute. Therefore, the defendant should be charged, if at all, with

a violation of MSA 609.52 rather than a violation of MSA 609.651.

## ISSUES

1. May the State of Minnesota appeal this pretrial dismissal of criminal charges since the trial court found a lack of probable cause?

2. Is Minn.Stat. § 609.651, subd. 1(4) applicable to the redemption of stolen lottery tickets?

## ANALYSIS

### I.

*Appealability*

■ Respondent first maintains the State of Minnesota is prohibited from bringing this appeal by Minn.R.Crim.P. 28.04, subd. 1(1).

The rule provides:

The prosecuting attorney may appeal as of right to the Court of Appeals:

(1) In any case, from any pretrial order of the trial court *except an order dismissing a complaint for lack of probable cause* to believe the defendant has committed an offense or an order dismissing a complaint pursuant to Minn.Stat. § 631.21.

Minn.R.Crim.P. 28.04, subd. 1(1) (emphasis added). The respondent argues that, since the trial court's order says it was dismissing the charges for lack of probable cause, this case is not appealable, not properly before this court, and should be dismissed.

The trial court did phrase its order in terms of a dismissal based on a lack of probable cause, but the rationale underlying dismissal is the trial court's legal interpretation of legislative intent behind Minn.Stat. § 609.651, subd. 1(4). The trial court reviewed the legislation and the evidence and concluded lottery fraud was not meant to cover the theft of lottery tickets and their subsequent redemption when small amounts of money were involved.

■ The trial court's reasoning is clear. The court found the legislative intent of the state lottery fraud statute was better

served by leaving respondent's factual scenario to the general theft statute, Minn. Stat. § 609.52 (1990). The trial court employed statutory construction to dismiss the criminal charges. Statutory construction is a question of law and is subject to de novo review on appeal. *Whetstone v. Hossfeld Mfg. Co.*, 457 N.W.2d 380, 382 (Minn.1990). Where a complaint is dismissed solely on a question of law, Minn. R.Crim.P. 28.04, subd. 1(1) does not prohibit appeal by the State of Minnesota. In *State v. Aarsvold*, 376 N.W.2d 518 (Minn. App.1985), *pet. for rev. denied* (Minn. Dec. 30, 1985) we stated:

> [t]he determination made by the trial court in this case is solely a question of law. The State has no additional evidence to gather which would bolster prosecution on this count. Because trial judges recognize that it is not their function to overrule the legal rulings of their colleagues, it is highly improbable that the State could successfully bring the complaint to another judge. It is also undesirable to require the State to engage in "judge-shopping" in hopes of finding a judge who disagrees with his or her colleague's ruling. We therefore hold that this order is an appealable order under Minnesota Rule of Criminal Procedure 28.04, subd. 1.

*Id.* at 520–21. Here, the result is the same. The trial court dismissed the criminal complaint based on a legal interpretation of a statute. The state can appeal a dismissal based on statutory construction.

■ Respondent further argues the state is not precluded from prosecuting respondent under the general theft statute, Minn.Stat. § 609.52 and, therefore, should not be allowed to appeal the trial court's dismissal of the lottery fraud complaints. We disagree. Respondent is correct that the general theft statute covers his client's alleged conduct. However, the possibility of multiple applicable statutes does not prevent the state from appealing and arguing that they prefer to charge respondent under lottery fraud rather than theft if both cover. A number of crimes may contain overlapping fact components. For instance, elements of robbery, burglary, theft, and fraud may overlap. Elements of criminal sexual conduct, kidnapping, assault, and homicide may overlap. The state has the burden of proving each and every essential element of the whatever crime they choose to charge, but they do have discretion to choose the more serious or the less serious, or both, when the facts to them appear to involve more than one criminal statute.

We find this appeal properly before this court.

## II.

*Does Minn.Stat. § 609.651, subd. 1(4) cover respondent's conduct?*

■ The trial court's memorandum details the statutory construction of Minn. Stat. § 609.651, subd. 1(4). Minn.Stat. § 645.16 (1990) provides:

> [w]hen the words of a law in their application to an existing situation are clear and free from all ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit.

Courts need not engage in statutory construction unless they determine the statute is ambiguous. "No room for judicial construction exists when the statute speaks for itself." *Commissioner of Revenue v. Richardson*, 302 N.W.2d 23, 26 (Minn. 1981). The "plain meaning rule" prevails in Minnesota. *Lahr v. City of St. Cloud*, 246 Minn. 489, 494 n. 10, 76 N.W.2d 119, 122 n. 9 (1956).

In looking to a statute to determine whether it is clear on its face, "[w]ords and phrases are construed according to rules of grammar and according to their common and approved usage[.]" Minn.Stat. § 645.-08(1) (1990). We look to the statute. Minn.Stat. § 609.651, subd. 1 provides:

> A person is guilty of a felony and may be sentenced under subdivision 4 if the person does any of the following with intent to defraud the state lottery:
>
> (1) alters or counterfeits a state lottery ticket;

(2) knowingly presents an altered or counterfeited state lottery for payment;

(3) knowingly transfers an altered or counterfeited state lottery ticket to another person; or

(4) *otherwise claims a lottery prize by means of fraud, deceit, or misrepresentation.*

*Id.* (emphasis added). Subdivision 1(4) is the provision the state used to charge respondent.

Respondent contends subdivision 1(4) is intended to apply only to situations similarly described in clauses (1)–(3) above. Respondent argues his act of knowingly redeeming stolen lottery tickets is not an act intended to "defraud" the state lottery. We disagree.

State law prohibits a stolen lottery ticket from being redeemed. *See* Minn.Stat. § 349A.08, subd. 7(b) (1990). To knowingly present a stolen ticket to claim a prize reasonably seems to be an act intended to defraud the state lottery by misrepresentation. Subdivision 1(1)–(3) cover acts specifically dealing with tampering and counterfeiting of lottery tickets. Subdivision 1(4) is broader, generic, and covers all other schemes for claiming prizes by employing fraud, deceit or misrepresentation. It is difficult to assume the legislature meant to punish fraud against the state lottery *only* when altered or counterfeited tickets were involved. That interpretation would be narrow and expose the state lottery system to the myriad of existing criminal schemes besides altering and counterfeiting. One such scheme is present here. The theft of lottery tickets and the later presentation for a cash prize with the redeemer implying he legitimately came by the ticket.

The language of subdivision 1(4), given an ordinary meaning, supports appellant's position. A person is guilty of a felony if, with intent to defraud, he "otherwise claims a lottery prize by means of fraud, deceit, or misrepresentation." Minn.Stat. § 609.651, subd. 1(4) (emphasis added). "Fraud," "deceit," and "misrepresentation" are established words:

*Fraud.* An intentional perversion of truth for the purpose of inducing another in reliance upon it to part with some valuable thing belonging to him or to surrender a legal right. *A false representation of a matter of fact, whether by words or by conduct,* by false or misleading allegations, or by concealment of that which should have been disclosed, which deceives and is intended to deceive another so that he shall act upon it to his legal injury. Any kind of artifice employed by one person to deceive another.

*Deceit.* A fraudulent and deceptive misrepresentation, artifice, or device, used by one or more persons to deceive and trick another, who is ignorant of the true facts, to the prejudice and damage of the party imposed upon.

*Misrepresentation.*
*Any manifestation by words or other conduct by one person to another that, under the circumstances, amounts to an assertion not in accordance with the facts.* An untrue statement of fact. An incorrect or false representation. That which, if accepted, leads the mind to an apprehension of a condition other and different from that which exists. Colloquially it is understood to mean a statement made to deceive or mislead.

*Black's Law Dictionary,* 594, 365, 903 (5th ed. 1979 (emphasis added); *see also Webster's Unabridged Dictionary,* 469, 729, 1150 (2nd ed. 1983).

What respondent did fits within the ordinary meaning of the statutory language. He stole lottery tickets, and after determining which tickets were winners, presented those to claim cash prizes. By implication, he represented to the stores he was lawfully possessed of the tickets and entitled to redeem them for prizes. He was not entitled to claim those prizes.

The presentation of stolen tickets for payment is covered by the language of Minn.Stat. § 609.651, subd. 1(4). The act of presentation is distinct and separate from the act of stealing the tickets. We find the state (subject, obviously, to its

burden of proof) can charge respondent under lottery fraud and/or theft, and its choice of lottery fraud is not precluded because the theft statute would also apply.

If we assume for the sake of argument that Minn.Stat. § 609.651, subd. 1(4) is not clear on its face and is in need of statutory construction, we find legislative intent supports appellant's position. Both the trial court and respondent rely on comments made by senate counsel during committee hearings to argue that redemption of stolen lottery tickets was not intended to be covered by Minn.Stat. § 609.651, subd. 1(4). They contend that the committee intended only to treat acts involving tampered lottery tickets as fraud felonies under the statute. In discussing the amendment which created Minn.Stat. § 609.651, the senate counsel stated:

> This basically moves the felony provisions that are in the bill to chapter 609 the criminal code, but it also makes a couple of minor changes. * * * The, these provisions will all be felonies and *they all require intent to defraud* the state lottery. *And they include* altering a state lottery ticket, presenting an altered state lottery ticket for payment, transferring an altered state lottery ticket, making a false statement in materials required to be submitted under the state lottery chapter, making a false statement to the director of the state lottery in an application for a bid, obtaining access to the state lottery computer database and *claiming a lottery prize by means of fraud, deceit or misrepresentation.* The sentence that's in this amendment is a ten year felony and that was selected because that is the sentence for aggravated forgery which seemed the closest to *most* of these provisions.

(Emphasis added). Respondent contends the analogy to aggravated forgery to find the 10 year sentence shows legislative intent to leave out redemption of stolen lottery tickets. This reading is overly narrow.

Counsel's statement is clear that all the statute's provisions will be felonies. The counsel's interpretation of the statute's application is not limited to just attempts to defraud involving altered tickets. The broad clause, subdivision 1(4), is a defined alternative to acts involving tampering and counterfeiting. The reference to aggravated forgery did not define the lottery fraud statute, but was used as an example of what type of sentence might be appropriate for violating Minn.Stat. § 609.651, subd. 1(4). Senate counsel did not state that aggravated forgery was like all offenses under the lottery fraud statute. The aggravated forgery reference was there because it was similar to most of the delineated lottery frauds.

The trial court's memorandum shows it could not honestly reconcile $69 in fraudulently claimed lottery prizes and a potential 10 year felony sentence. The trial court found no distinction between what respondent did and an individual who stole $69 from someone who had won a lottery prize (misdemeanor with a 90–day maximum jail sentence).

We agree with the trial court's common sense analogy. It is correct, but the legislature has the prerogative to treat different types of wrongs with different sentences, even though the amount of money involved is a constant. A basic example is forgery. Stealing one dollar from a storekeeper is misdemeanor theft. Writing or passing a forged check for one dollar is felony forgery with a possible 10 year sentence. The amount of money is the same, and the detriment to the storekeeper is the same—he is out one dollar. However, the underlying scheme to get that one dollar is different, and while the amount of money involved is a practical argument to raise at sentencing, legislative discretion to say this illegal conduct is worse than that illegal conduct is recognized.

The committee minutes show this very argument regarding disproportionate punishment based on pecuniary amount was raised and rejected. The minutes are clear that to protect the integrity of the state lottery, the punishment was was not tied to the amount. Specifically, a senator raised the disproportionate money concern:

I just don't how [sic] to accept the notion that we have severity of crimes affect for everybody else to steal from based upon, for the most part, the level of the theft. But for this sacred event, that doesn't apply. I mean it's much more serious to steal $5.00 from from [sic] the state than it is to steal $2,000 from any one of its citizens. That doesn't make sense.

This comment tracks the trial court's thoughtful memorandum, but this argument was rejected by the committee and, unlike the general theft statute, dollar amounts to distinguish between misdemeanor and felony were not set.

One purpose of the lottery fraud statute is to safeguard the integrity of the lottery. Any scheme which defrauds the lottery, no matter how small, undermines the integrity of lottery security and is deemed extremely serious. The integrity of the Minnesota state lottery is the underpinning for millions of dollars of citizens' personal funds and state revenues.

■ Minnesota chose to enact a specific criminal statute to deal with lottery fraud. We find Minn.Stat. § 609.651, subd. 1(4), both by its plain language and by legislative intent, covers the presentation of a stolen ticket to claim a prize.

## DECISION

The State of Minnesota can appeal a pretrial dismissal of criminal charges when the dismissal is based solely on a question of law.

The trial court erred when it construed Minn.Stat. § 609.651, subd. 1(4) to be inapplicable to the knowing redemption of stolen lottery tickets.

Reversed and remanded.