**SOUTHERN MINNESOTA MUNICIPAL POWER AGENCY petitioner, Appellant,**

v.

**Bill BOYNE, et al., Respondents.**

No. C5–96–2325.

Supreme Court of Minnesota.

May 28, 1998.

Raymond A. Hayward, Julie Anne Rich, Dorsey & Whitney L.L.P., Rochester, for appellant.

Mark R. Anfinson, Minneapolis, for respondents.

## OPINION

GILBERT, Justice.

This case raises the issue of whether appellant Southern Minnesota Municipal Power Agency (SMMPA), a municipal power agency incorporated pursuant to Minn.Stat.

§§ 453.51–.62 (1996), is subject to the Minnesota Open Meeting Law, Minn.Stat. § 471.705 (1996), and the Minnesota Government Data Practices Act, Minn.Stat. §§ 13.01–.99 (1996). SMMPA contends it is not subject to either the Open Meeting Law or the Data Practices Act because the legislature granted it the authority to conduct its affairs as a private corporation, which includes the authority to hold closed meetings and keep records private. We agree and reverse the court of appeals decision.

## I.

SMMPA is a municipal power agency that was formed in 1977 by the joint action of 18 cities in southern Minnesota pursuant to Minn.Stat. §§ 453.51–.62 (1996) ("enabling legislation"). The enabling legislation permits cities to create municipal electric power agencies to ensure adequate, economical, and reliable sources of electric energy for the benefit of their citizens. Minn.Stat. § 453.51. Municipal power agencies are established "by the execution of an agency agreement authorized by a resolution of the governing body of each city." Minn.Stat. § 453.53, subd. 1. If the agency agreement conforms to the requirements of the enabling legislation and is filed with the secretary of state, the secretary of state then issues a certificate of incorporation for the municipal power agency. Minn.Stat. § 453.53, subd. 2. SMMPA generates and transmits electricity and supplies it at wholesale to its 18 member cities. Those member cities then distribute the electricity to their respective retail customers.

Although SMMPA, by statute, is a municipal corporation and a political subdivision of the state which is deemed to be performing an essential governmental function, it also operates a business. *See* Minn.Stat. § 453.53, subd. 1(1); Minn.Stat. § 453.54, subd. 1. It presumably generates revenues, incurs expenses, establishes rates, and it has statutory authority to finance, acquire, and dispose of property. Minn.Stat. § 453.54, subds. 7, 8, 9. SMMPA, and not its member cities, is liable on any bonds or notes issued

to raise working capital. Minn.Stat. § 453.55, subd. 11. Furthermore, the enabling legislation requires SMMPA to maintain a registered office and be run by a board of directors and its officers. Minn.Stat. § 453.54, subd. 1; Minn.Stat. § 453.53, subds. 6, 7. Boards of municipal power agencies consist of at least five persons who are representatives of the respective member cities and who are selected by agreement or by a majority of the vote of such representatives. *Id.* at subds. 1(6), 5.

Faced with an increasingly competitive electric utility industry, SMMPA asserts that it is necessary for it from time to time (like its privately-run competitors) to conduct closed board meetings to discuss strategy and other sensitive business information. Accordingly, it amended its bylaws to provide for closed board meetings and privacy for its records. SMMPA then brought a declaratory judgment action in district court to declare that the meetings of its board of directors are not subject to the Open Meeting Law. Respondents, various newspaper publishers and journalists, counterclaimed, asserting that SMMPA's board must comply with the Open Meeting Law and that SMMPA's records have to be made public under the Data Practices Act.[1] On cross-motions for summary judgment, the district court granted relief to SMMPA, finding that the Open Meeting Law and the Data Practices Act do not apply to SMMPA. The court of appeals reversed on both issues, and SMMPA now appeals to this court.

## II.

■ SMMPA contends that the court of appeals erred in reversing the district court's order of summary judgment in favor of SMMPA. When reviewing a grant of summary judgment, this court must determine whether there are any genuine issues of material fact and whether the court below erred in applying the law. *Art Goebel, Inc. v. North Suburban Agencies, Inc.,* 567 N.W.2d 511, 515 (Minn.1997). Neither party disputes any facts of this case. Rather, the parties

---

1. We note that there is nothing in the record to indicate that the respondents ever made a specific request for any documents from SMMPA under the Data Practices Act nor have they specified in their pleadings which documents they seek.

disagree as to whether the Open Meeting Law and Data Practices Act apply to SMMPA. This court uses a de novo standard of review in determining whether the court below erred in its application of the law or the construction of a statute. *Id.; Doe v. Minnesota State Bd. of Med. Exam'rs,* 435 N.W.2d 45, 48 (Minn.1989).

We begin our review by examining the requirements of the Open Meeting Law and the Data Practices Act. The Open Meeting Law provides in relevant part:

> Except as otherwise expressly provided by statute, all meetings, including éxecutive sessions, of any state agency, board, commission or department when required or permitted by law to transact public business in a meeting, and the governing body of any school district however organized, unorganized territory, county, city, town, or other public body, and of any committee, subcommittee, board, department or commission thereof, shall be open to the public, except meetings of the commissioner of corrections.

Minn.Stat. § 471.705, subd. 1.[2] The Data Practices Act requires that "[a]ll government data collected, created, received, maintained or disseminated by a state agency, political subdivision, or statewide system shall be public unless classified by statute * * * as nonpublic or protected nonpublic." Minn. Stat. § 13.03, subd. 1. "Government data" includes "all data collected, created, received, maintained or disseminated by any state agency, political subdivision, or statewide system." Minn.Stat. § 13.02, subd. 7. A willful violation of the Data Practices Act carries a criminal penalty;[3] criminal statutes are generally strictly construed. *State v. Zacher,* 504 N.W.2d 468, 473 (Minn.1993).

The next point of our analysis in this case is the enabling legislation under which SMMPA was formed. Critically, the en-abling legislation grants SMMPA, as a duly-formed municipal power agency, the power to run its business like a private corporation. Minnesota Statutes § 453.54, subd. 21, provides that municipal power agencies may:

> [E]xercise all * * * powers not inconsistent with the Constitution of the state of Minnesota or the United States Constitution, which powers may be reasonably necessary or appropriate for or incidental to the effectuation of its authorized purposes or to the exercise of any of the powers enumerated in [section 453.54], and generally may exercise in connection with its property and affairs, * * * *any and all powers which might be exercised by a natural person or a private corporation in connection with similar property and affairs.*

(Emphasis added). The legislature has defined a private corporation as a "company, association or body endowed by law with a corporate power or function. The term does not include a public corporation." Minn.Stat. § 300.02, subd. 3 (1996). A public corporation is a "corporation formed solely for public and governmental purposes." *Id.* at subd. 7. Although SMMPA possesses some attributes of a public corporation and is governed by its 18 member cities, SMMPA's private corporate powers distinguish it from public corporations formed solely for public and governmental purposes.

The dissent seems to suggest that SMMPA is not distinguishable from a public corporation because it does not sell stock to raise capital. The legislature disagrees. The legislature endowed SMMPA with the powers of a private corporation in connection with similar property or affairs. The words "private corporation" in the enabling legislation are free from all ambiguity. "When the words of a law in their application to an existing situation are clear and free from all

---

**2.** An intentional violation of the Open Meeting Law may result in a civil penalty of up to $300.00. Minn.Stat. § 471.705, subd. 2(a). In addition, if a person is found to have intentionally violated the Open Meeting Law three or more times involving the same governing body, he or she forfeits any right to serve with that public body for the remainder of his or her term, or in any other capacity. *Id.*

**3.** Any person who willfully violates the Data Practices Act is guilty of a misdemeanor, and a willful violation by any public employee constitutes just cause for either suspension without pay or dismissal. Minn.Stat. § 13.09.

ambiguity, the letter of the law shall not be disregarded under the pretext of pursuing the spirit." Minn.Stat. § 645.16 (1996). SMMPA has been granted management powers over its property and affairs similar to a private corporation. These powers are carried out by SMMPA with the authority of its 18 municipal member representatives and its board of directors as provided in its bylaws. In managing its affairs, a private corporation may adopt bylaws establishing the manner of calling and holding all meetings. Minn.Stat. § 300.52, subd. 1 (1996). This is precisely what SMMPA has done in this case.

It appears from the record that SMMPA's bylaws, as they existed at the time of this litigation, were created and amended pursuant to Minn.Stat. § 453.53, subd. 4, which requires that the bylaws of municipal power agencies "shall be proposed by the board of directors and shall be adopted by a majority vote of the representatives of the member cities." SMMPA's bylaws establish the manner and time of conducting meetings and address the regulation of SMMPA's property and affairs. The bylaws provide that all 18 municipal member representatives and the 18 alternate member representatives may attend meetings and have access to SMMPA's records as though SMMPA was subject to the Open Meeting Law and the Data Practices Act. The bylaws do not allow for general public access. However, at oral argument, SMMPA's counsel noted that SMMPA prepares detailed quarterly and annual financial statements which it distributes to its 18 member cities. Once in the control of the respective cities, who are subject to the Data Practices Act, these statements are available for inspection by the general public. *See* Minn.Stat. § 13.02, subd. 7; § 13.03, subd. 1. In addition, each agency agreement between SMMPA and each of the 18 cities are public and on file with the secretary of state. *See* Minn.Stat. § 453.53, subd. 2.

Through the enabling legislation, the legislature plainly granted SMMPA the authority to run its affairs like a private corporation. We have long held that the plain language of the statute shall not be disregarded if the meaning is clear. *Kirkwold Constr. Co. v. Capital M.G.A. Constr., Inc.,* 513 N.W.2d 241

(Minn.1994); *Lahr v. City of St. Cloud,* 246 Minn. 489, 494 n. 10, 76 N.W.2d 119, 122 n. 9 (1956). This authority includes the power to hold meetings in accordance with its established bylaws. SMMPA's bylaws provide for some privacy of its board meetings and for its documents. As such, SMMPA's bylaws are somewhat similar to those of a private corporation preserving some privacy in dealing with its affairs and its properties. The dissent appears to entirely dismiss the proprietary nature of SMMPA and the private corporate attributes bestowed upon SMMPA by the legislature.

The dissent further states that, absent the application of the Open Meeting Law to SMMPA, there is no corresponding assurance of proper conduct or internal checks among board members of municipal power agencies. However, the newspapers are not asserting any wrongdoing, they merely are demanding the right to be at all of SMMPA's board meetings and to have access to all of its documents. Furthermore, the enabling legislation mandates that SMMPA's directors "discharge their duties in good faith, and with that diligence and care which an ordinary prudent person in a like position would exercise under similar circumstances." Minn.Stat. § 453.53, subd. 6. As the legislature envisioned, SMMPA needed some discretion to conduct its business. As such, the board deemed that it would be impractical for SMMPA to have to open to the public and its competitors all of its strategy meetings and documentation on management issues such as marketing, acquisitions, budgets, and personnel matters.

Nonetheless, respondents contend that compliance with the Open Meeting Law and Data Practices Act is necessary for adequate regulation of municipal power agencies. Despite respondent's claim, however, the language contained in the enabling legislation granting municipal power agencies the authority to act as private corporations regarding their affairs is clear, and it is not our role to read beyond those words. *See Olson v. Ford Motor Co.,* 558 N.W.2d 491, 496 (Minn. 1997) (stating that our role is not to challenge the wisdom of the legislature, but "to

give effect to its will as expressed in the unambiguous language of the statute").

Moreover, the legislature has instructed that the enabling legislation:

> shall be construed liberally to effectuate its legislative intent and purpose, as complete and independent authority for the performance of each and every act and thing authorized by [the enabling legislation] and all authority granted shall be broadly interpreted to effectuate this intent and purpose and not as a limitation of powers.

Minn.Stat. § 453.62, subd. 1. This mandate reemphasizes SMMPA's private corporation attributes and its right to be governed pursuant to its duly-adopted bylaws. SMMPA has permissibly elected, for reasonable proprietary and business concerns, to close some of its board meetings to the public because it is not subject to the Open Meeting Law or the Data Practices Act.

The complete and independent authority granted to municipal power agencies to conduct their business as would a private corporation potentially creates a conflict with the public access nature of the Open Meeting Law and Data Practices Act. Indeed, the parties disagree over the effect and applicability of these statutory provisions relating to SMMPA. We conclude, however, that the legislature has provided that municipal power agencies, in managing their property and affairs, may act as private corporations and, as such, neither the Open Meeting Law nor the Data Practices Act apply to SMMPA.

■ Moreover, when there is a "conflict or inconsistency between [the enabling legislation] and *any other law* or charter provision, [the enabling legislation] shall prevail." Minn.Stat. 453.62, subd. 2 (emphasis added). The legislature also mandated that this prevailing provision, like all provisions in the enabling legislation, shall be liberally construed. Minn.Stat. § 453.62, subd. 1. Ac-

cordingly, to the extent there is a conflict between the enabling legislation and the Data Privacy Act or Open Meeting Law, the private corporation powers granted to SMMPA by the enabling legislation prevail.

Because we conclude that the enabling legislation allows municipal power agencies to manage their property and affairs in the same manner as a private corporation pursuant to their bylaws, we hold that SMMPA's election through its duly-adopted bylaws to restrict access to its meetings and records is within the statutory discretion granted to SMMPA.

Reversed.

TOMLJANOVICH, J., took no part in the consideration or decision of this case.

GARDEBRING, Justice (dissenting).

I respectfully dissent from the majority's conclusion today because neither the statutory grant of authority to the Southern Minnesota Municipal Power Agency nor the provisions of the state's Open Meeting Law and Data Practices Act provide for such a result. At the heart of the majority's analysis is a mistaken view of the essential nature of a municipal power authority.

The majority argument begins with the statutory language granting SMMPA and other municipal power authorities "any and all powers which might be exercised by a natural person or a private corporation in connection with similar property and affairs." Minn.Stat. § 453.54, subd. 21 (1996).[4] From this, the majority concludes that, because private corporations may have closed meetings and keep internal information secret, SMMPA may proceed in the same way. However, SMMPA clearly does not have all of the powers of a business corporation formed under the laws of Minnesota, nor does it conduct its business as a private corporation does. First, a municipal power

---

4. Even the majority's reliance on SMMPA's similarity to a chapter 302A corporation is flawed, since that chapter specifically provides some limitation on what a private corporation may do. "A corporation has [certain enumerated powers], *subject to any limitations provided in any other statute of this state or in its articles.*" Minn.Stat. § 302A.161, subd. 1 (1996) (emphasis added).

Thus, if SMMPA is simply an unusual kind of "private corporation"—one that is, ironically, not actually privately owned, but rather owned by a number of municipalities and authorized to exercise the sovereign power of the state—it could still be subject to the provisions of the Open Meeting Law and the Data Privacy Act.

authority authorized under chapter 453 is not created by private individuals for private ends. *See* Minn.Stat. § 302A.101 (1996). Rather, it can be formed only by the acts of other units of government—cities—which are authorized to join together to secure "an adequate, economical, and reliable supply of energy." Minn.Stat. § 453.51 (1996). No private business objectives are served by a municipal power agency, as is the requirement for a business corporation. *See* Minn. Stat. § 302A.011, subd. 8 (1996). Further, no one, including the majority, would argue that SMMPA can acquire capital for its business purposes through the issuance of stock, as can a business corporation. *See* Minn. Stat. § 302A.401 (1996). While a business corporation is owned only by those who choose to invest equity, a municipal power authority is owned by all the citizens of the communities which join together to create it.

These differences illustrate a simple point—while SMMPA is like a private corporation in some respects, in other respects it is quite different. And it is those latter characteristics that make it subject to the provisions of both the Open Meeting Law and the Data Practices Act. A municipal power agency can be formed only by the actions of "two or more cities" and "is created and incorporated * * * as a *municipal corporation and a political subdivision of the state, to exercise thereunder a part of the sovereign powers of the state.*" Minn.Stat. § 453.53, subd. 1 (1996) (emphasis added). Further, a municipal power agency is "deemed to be performing an *essential government function.*" Minn.Stat. § 453.54, subd. 1 (1996) (emphasis added). The majority chooses to overlook these critical characteristics of SMMPA—that it is a political subdivision of the state, exercising the sovereign powers of the state, performing an essential government function—things that surely cannot be said of a private corporation.

Furthermore, these statutorily-defined characteristics of SMMPA bring it squarely within the reach of both the Open Meeting Law and the Data Practices Act. The Open Meeting Law provides that:

> Except as otherwise expressly provided by statute, all meetings, including executive sessions, of * * * the governing body of any school district however organized, unorganized territory, county, city, town or *other public body,* * * * shall be open to the public.

Minn.Stat. § 471.705, subd. 1 (1996) (emphasis added). The Open Meeting Law does not define "other public body," but surely a "political subdivision" created to exercise the "sovereign powers of the state" must be within the scope of that generic language. Thus, under the plain language of the Open Meeting Law, SMMPA is governed by its requirements and its meetings are required to be open to the press and to members of the public.

This result is consistent with our understanding of the legislative purpose of the Open Meeting Law. We said in *St. Cloud Newspapers, Inc. v. District 742 Community Schs.,* 332 N.W.2d 1, 4 (Minn.1983), that the statute has three objectives:

> (1) "to prohibit actions being taken at a secret meeting where it is impossible for the interested public to become fully informed concerning board decisions or to detect improper influences," *Lindahl v. Independent School District No. 306,* 270 Minn. 164, 167, 133 N.W.2d 23, 26 (1965); (2) "to assure the public's right to be informed," *Channel 10, Inc. v. Independent School District No. 709,* 298 Minn. 306, 313, 215 N.W.2d 814, 821 (1974); and (3) "to afford the public an opportunity to present its views to the board," *Sullivan v. Credit River Township,* 299 Minn. 170, 175, 217 N.W.2d 502, 506 (1974).

These objectives are surely as applicable to the efficient delivery of electrical power by a public entity as they are to the provision of education to Minnesota's children. Indeed, this court has stated unequivocally that the Open Meeting Law must be construed broadly in favor of the public. *Merz v. Leitch,* 342 N.W.2d 141, 145 (Minn.1984).

Moreover, public access to records and meetings of municipal power agencies such as SMMPA is critical because, unlike private business corporations organized under Minn. Stat. ch. 302A, the enabling legislation does not provide for any internal checks on agency authority. Chapter 302A requires that the

directors of private business corporations act in good faith and in the best interests of the corporation. Minn.Stat. § 302A.251, subd. 1 (1996). Directors of private corporations are also personally liable for a breach of loyalty, acts or omissions made in bad faith or that involve intentional misconduct or a knowing violation of the law, or for any transaction from which the director derived an improper benefit. *Id.* at subd. 4 (1996). Absent application of the Open Meeting Law, there is no corresponding assurance of proper conduct among board members of municipal power agencies.

The analysis under the Data Practices Act is similar, though perhaps even stronger. The Data Practices Act, adopted by the legislature initially in 1974 to provide the public with information about governmental activities, regulates access to records maintained by governmental agencies. *See* Minn.Stat. §§ 13.01–.99 (1996). It provides that all "state agencies, *political subdivisions* and statewide systems shall be governed by" the Data Practices Act. Minn.Stat. § 13.01, subd. 1 (emphasis added). It further defines "political subdivision" to mean "any county, statutory or home rule charter city, school district, special district and any board, commission, district or *authority created pursuant to law,* local ordinance, or charter provision." Minn.Stat. § 13.02, subd. 11 (emphasis added). Thus, SMMPA, which is by definition a "political subdivision" and a governmental "authority created pursuant to law," is, by operation of its enabling legislation and the Data Practices Act, governed by that act. To argue otherwise is to ignore the plain meaning of both statutes, which this court should be loathe to do.

It is also significant to note that the legislature has specifically provided for exceptions to the application of these two important statutes, including entities that share the same kinds of competitive pressures identified by SMMPA as a reason for its exclusion from the statutes at issue here. For example, Minn.Stat. § 144.581, subd. 5 (1996), provides that meetings of the board of directors of a government-owned or operated hospital may close meetings to discuss specific mar-

keting activity where disclosure of information would cause harm to the hospital's competitive position. Significantly, the Open Meeting Law itself requires that it applies to all public bodies unless "otherwise expressly provided by statute." Minn.Stat. § 471.705 (1996). The absence of such an explicit exclusion for SMMPA and similar organizations suggests that the legislature intended for the Data Practices Act and the Open Meeting Law to apply to them.

Finally, the majority notes that SMMPA has elected "for reasonable proprietary and business concerns" to close some of its board meetings to the public and prohibit public access to its records. This concern for SMMPA's role in the electric utility market and its competitive position vis a vis other utilities, some of them private, is perhaps commendable, but ought not to influence the decision of this court. There are good and appropriate reasons for statutes such as the Open Meeting Law and the Data Practices Act, including to shed a little sunshine on the inner workings of government. Cities are not required to join together to form publicly-owned electrical utilities, but if they do, those publicly-owned entities should not automatically be entitled to a level of secrecy in doing business that other government entities are not accorded. If SMMPA is indeed conducting an essential government function, that is all the more reason to allow the public access to its operations.

I conclude that SMMPA is subject to both the Open Meeting Law and the Data Practices Act, and would therefore, affirm the court of appeals.

ANDERSON, Justice (dissenting).

I join in the dissent of Justice Gardebring.