**STATE of Minnesota, Appellant,**

v.

**Jason Lonnie GABBERT, Respondent.**

**No. A04–1785.**

Court of Appeals of Minnesota.

March 22, 2005.

**476**

Mike Hatch, Attorney General; and Thomas R. Hughes, Hughes & Costello, St. Paul, MN, for appellant.

John L. Lucas, Minneapolis, MN, for respondent.

Considered and decided by TOUSSAINT, Chief Judge; SHUMAKER, Judge; and DIETZEN, Judge.

## OPINION

DIETZEN, Judge.

Respondent was charged with scalping advance-sale Minnesota State Fair tickets. The district court dismissed the complaint, holding that as a matter of law respondent did not violate the state's ticket-scalping statute. We affirm in part, reverse in part, and remand.

## FACTS

On August 28, 2003, respondent Jason Lonnie Gabbert was arrested outside the Minnesota State Fair for ticket scalping. State Fair police officers observed Gabbert selling advance-sale State Fair tickets— available for $6 per ticket before August 20, 2003—for $7 per ticket. The ticket stated on its face that it cost $6 and that it was "not for sale after August 20, 2003." The arresting officer testified that Gabbert admitted selling over 2,000 advance-sale tickets, some for face value and some for greater than face value, and additional tickets were found in the trunk of Gabbert's vehicle.

In a pretrial hearing, the district court dismissed the state's complaint because it held that Gabbert as a matter of law did not violate the ticket-scalping statute, Minn.Stat. § 609.805, subd. 2(2), 2(4) (2002). Specifically, under subdivision 2(2), the district court found that on August 28, 2003, State Fair tickets were sold for $8 at the fairgrounds box office, so selling advance-sale tickets for $7 did not constitute ticket scalping. Under subdivision 2(4), the district court held that the ticket language "not for sale after August 20, 2003" did not amount to a restriction on the tickets' sale so that Gabbert did not violate the statute. This appeal follows.

## ISSUES

1. May the state appeal the district court's dismissal of the complaint?

2. Did Gabbert violate Minn.Stat. § 609.805, subd. 2(2) or 2(4)?

## ANALYSIS

### I.

■ Minn. R.Crim. P. 28.04, subd. 1(1), provides that the state may not appeal a pretrial order "if it is based solely on a factual determination dismissing a complaint for lack of probable cause[.]" Gabbert argues that this provision applies, foreclosing the state's appeal. The state argues that its appeal is proper because the district court dismissed the case based on the court's legal interpretation of Minn. Stat. § 609.805 (2002).

■ A dismissal for lack of probable cause is appealable if it is based on a legal determination. *State v. Ciurleo*, 471 N.W.2d 119, 121 (Minn.App.1991). Thus, the appealability of the district court's order turns on whether the dismissal was based on a legal interpretation of the statute as opposed to a factual determination. We have determined that the state may appeal a pretrial order dismissing a complaint when the district court found that the lottery fraud statute did not apply to a defendant redeeming stolen lottery tickets. *State v. Kiminski*, 474 N.W.2d 385, 388–89 (Minn.App.1991), *review denied* (Minn. Oct. 11, 1991). In another case, we allowed the state to appeal when the district court found that a statute proscribing the act of carrying a pistol without a permit did not apply to a defendant on his way to a business meeting in Rhode Island. *State v. Linville*, 598 N.W.2d 1, 2–3 (Minn.App. 1999).

Here, the district court interpreted Minn.Stat. § 609.805, subd. 2, and held *as a matter of law* that the statute did not apply to Gabbert's activities. As Gabbert concedes, the district court merely applied

the plain meaning of the statute—itself a form of statutory interpretation, because a court must decide as a preliminary matter whether a statute is clear or ambiguous—and found that Gabbert's conduct was not a criminal act. Based on our review, we conclude that the state is challenging a dismissal for lack of probable cause based on an appealable question of law.

## II.

We now turn to a de novo review of the statutory charges against Gabbert. Whether a statute has been properly construed is a question of law subject to de novo review. *State v. Murphy*, 545 N.W.2d 909, 914 (Minn.1996). When, as here, the facts are stipulated, the district court's application of law to the facts is a question of law reviewed de novo. *Morton Bldgs., Inc. v. Comm'r of Revenue*, 488 N.W.2d 254, 257 (Minn.1992).

Gabbert was charged under Minn.Stat. § 609.805, subd. 2(2), for "charg[ing] for admission to an event a price greater than that advertised or stated on tickets issued for the event." Minn.Stat. § 609.805, subd. 2(2). The interpretation of Minn. Stat. § 609.805 is a matter of first impression for this court. Initially, we must construe laws "to ascertain and effectuate the intention of the legislature." Minn.Stat. § 645.16 (2004). "Words and phrases are construed according to rules of grammar and according to their common and approved usage[.]" Minn.Stat. § 645.08 (2004). If the language in a statute is clear, courts will rely on the statute's plain meaning. *Correll v. Distinctive Dental Servs.*, 607 N.W.2d 440, 445 (Minn.2000). Language is ambiguous if it is reasonably subject to more than one interpretation. *State by Beaulieu v. RSJ, Inc.*, 552 N.W.2d 695, 701 (Minn.1996).

The state argues that the plain meaning of subdivision 2(2) prohibits a ticket seller from charging a price greater than the amount stated on the face of the ticket that he is selling. According to the state, Gabbert violated the statute because he sold a $6 advance-sale ticket for $7. Gabbert argues that the statute only prohibits charging a price greater than the price on the face of the ticket issued for the event that same day, not on the face price on the advance ticket. According to Gabbert, because tickets were available at the fairgrounds box office for $8 on August 28, 2003, Gabbert did not charge a price greater than tickets issued for the fair.

We agree with Gabbert. The plain language of subdivision 2(2) prohibits a ticket seller from charging a price greater than "stated on *tickets issued* for the event." Minn.Stat. § 609.805, subd. 2(2) (emphasis added). On August 28, 2003, the price stated on tickets issued for the state fair at its place of admission was $8. Giving the statutory language its plain and ordinary meaning results in a conclusion that a ticket seller is only prohibited from selling tickets at a price greater than the price stated on the tickets issued at the place of admission to the state fair that same day. To hold otherwise would create ambiguity and uncertainty as to what price charged on tickets issued for an event would be considered scalping.

Another portion of the ticket-scalping statute prohibits anyone from selling or offering to "sell a ticket to an event at a price greater than that charged at the place of admission or *printed on the ticket.*" *Id.*, subd. 2(3) (emphasis added). Because the state did not charge Gabbert with violating subdivision 2(3), we decline to address this provision. Therefore, we affirm the district court's order dismissing that portion of the complaint alleging ticket scalping under Minn.Stat. § 609.805, subd. 2(2).

Gabbert was also charged with violating Minn.Stat. § 609.805, subd. 2(4), for receiving "a ticket to an event under conditions restricting its transfer" and allegedly selling it in violation of the conditions. *Id.*, subd. 2(4). The state argues that the advance-sale tickets' language "not for sale after August 20, 2003," is a condition restricting the tickets' transfer under the statute. Gabbert argues that the ticket language merely notified the public that the discounted advance-sale tickets would not be sold by the state fair after August 20, 2003. The district court reasoned that for Gabbert to violate the statute, the ticket must have stated, for example, that it was "not transferable" after August 20, 2003.

We disagree. The statutory language prohibits a ticket seller from receiving a ticket with a condition restricting its transfer and then selling it in violation of the condition. The ticket language "not for sale after August 20, 2003" is clearly a condition that seeks to restrict the ticket's transfer. The ticket language informs its recipient that sale of the ticket is prohibited after August 20, 2003. The statute also requires that the ticket recipient sell the ticket in violation of the restriction, and it is undisputed that Gabbert was observed selling advance-sale tickets near the fairgrounds on August 28, 2003. Therefore, as a matter of law, we conclude that the complaint charged that Gabbert received a ticket with a condition restricting its transfer and sold it in breach of the condition. Because this conduct, if proved, would be a violation of Minn.Stat. § 609.805, subd. 2(4), the district court erred in dismissing that part of the complaint.

## DECISION

We affirm the district court's dismissal of the complaint charging a violation of Minn.Stat. § 609.805, subd. 2(2) (2002), be-

cause Gabbert did not sell the advance-sale tickets for a price greater than the price stated on tickets available at the place of admission for the state fair on August 28, 2003. We reverse, and remand for further proceedings, the district court's dismissal of that part of the complaint charging a violation of Minn.Stat. § 609.805, subd. 2(4), because Gabbert received a ticket with a condition restricting its transfer and allegedly sold the ticket in violation of the condition.

**Affirmed in part, reversed in part, and remanded.**