## MINNESOTA JOINT UNDERWRITING ASSOCIATION, Appellant,

v.

## STAR TRIBUNE MEDIA COMPANY, LLC, Respondent.

No. A13–2112.

Court of Appeals of Minnesota.

June 9, 2014.

Review Granted Aug. 19, 2014.

Paula Duggan Vraa, Jennifer L. Young, Larson King, LLP, St. Paul, MN, for appellant.

John P. Borger, Mary Andreleita Walker, Faegre Baker Daniels, LLP, Minneapolis, MN, for respondent.

Considered and decided by SMITH, Presiding Judge; PETERSON, Judge; and CRIPPEN, Judge.*

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

## OPINION

PETERSON, Judge.

In this appeal from a judgment on the pleadings requiring appellant to disclose certain data under the Minnesota Government Data Practices Act (MGDPA), appellant argues that it is not a "government entity" and, therefore, it is not subject to the MGDPA. Respondent filed a related appeal challenging the district court's denial of its request for attorney fees and exemplary damages under Minn.Stat. § 13.08, subds. 1, 4(c) (2012). We affirm in part and reverse in part.

## FACTS

A reporter for respondent Star Tribune Media Company LLC submitted written requests to appellant Minnesota Joint Underwriting Association (MJUA), Minn.Stat. §§ 62I.001–.22 (2012), requesting disclosure of data on policyholders covered by the MJUA and data submitted to the Minnesota Department of Commerce by the MJUA. The MJUA then brought this declaratory-judgment action, seeking a determination by the district court as to whether the MJUA is a government entity subject to the MGDPA, Minn.Stat. §§ 13.01–.99 (2012), and, if it is, a declaration that the data requested by respondent are not subject to disclosure under the MGDPA. Respondent filed a counterclaim, seeking an order that the MJUA is subject to the MGDPA and must disclose the requested data. Respondent also sought attorney fees and an award of exemplary damages under Minn.Stat. § 13.08, subds. 1, 4(c).

The legislature created the MJUA in 1986.[1] The purpose of the MJUA is

to provide insurance coverage to any person or entity unable to obtain insurance through ordinary methods if the insurance is required by statute, ordinance, or otherwise required by law, or is necessary to earn a livelihood or conduct a business and serves a public purpose, including, but not limited to, liquor liability.

Minn.Stat. § 62I.02, subd. 1. "Every insurer authorized to write property and casualty insurance and personal injury liability insurance in this state shall be a member of the association as a condition to obtaining and retaining a license to write insurance in this state." *Id.* The MJUA is governed by a 15–member board of directors; seven board members are elected by the MJUA, and eight members are appointed by the Minnesota Commissioner of Commerce. Minn.Stat. §§ 62F.02, subd. 3, 62I.02, subd. 2 (2012). The MJUA operates under a plan of operation created by the board and approved by the commissioner. Minn.Stat. § 62I.05.

The MGDPA states:

All government data collected, created, received, maintained or disseminated by a government entity shall be public unless classified by statute, or temporary classification pursuant to section 13.06, or federal law, as nonpublic or protected nonpublic, or with respect to data on individuals, as private or confidential.

Minn.Stat. § 13.03, subd. 1. " 'Government data' means all data collected, created, received, maintained or disseminated by any government entity regardless of its physical form, storage media or condition of use." Minn.Stat. § 13.02, subd. 7. A "government entity" is "a state agency, statewide system, or political subdivision." *Id.,* subd. 7a.

The MJUA filed a motion for judgment on the pleadings, and respondent filed a cross-motion for partial judgment on the pleadings. The district court concluded

1. 1986 Minn. Laws ch. 455, § 21, at 851.

that the MJUA is subject to the MGDPA and ordered the MJUA to disclose the requested data to respondent but denied respondent's requests for attorney fees and exemplary damages. On the MJUA's motion, the district court ordered that judgment be entered on all claims and counterclaims. This appeal followed.

## ISSUE

Is the MJUA a government entity subject to the MGDPA?

## ANALYSIS

Statutory interpretation presents a question of law, which we review de novo. *Halvorson v. Cnty. of Anoka*, 780 N.W.2d 385, 389 (Minn.App.2010).

> [T]he goal of all statutory interpretation is to ascertain and effectuate the intention of the legislature. The first step in statutory interpretation is to determine whether the statute's language, on its face, is ambiguous. In determining whether a statute is ambiguous, we will construe the statute's words and phrases according to their plain and ordinary meaning. A statute is only ambiguous if its language is subject to more than one reasonable interpretation. Multiple parts of a statute may be read together so as to ascertain whether the statute is ambiguous.... [I]f we conclude that the language in a statute is ambiguous, then we may consider the factors set forth by the Legislature for interpreting a statute.

*Christianson v. Henke*, 831 N.W.2d 532, 536–37 (Minn.2013) (quotations and citations omitted).

The parties agree that the MJUA is not a statewide system or a political subdivision and that the question before us is whether the MJUA is a state agency within the meaning of Minn.Stat. § 13.02, subd. 7a. The MGDPA defines "state agency" as "the state, the University of Minnesota, and any office, officer, department, division, bureau, board, commission, authority, district, or agency of the state." Minn. Stat. § 13.02, subd. 17.

The MJUA argues that because it is an association and an association is not specifically enumerated as one of the entities included in the MGDPA's definition of "state agency," it is not a state agency and, therefore, it is not subject to the MGDPA. *See City of St. Paul v. Eldredge*, 800 N.W.2d 643, 648 (Minn.2011) (stating that "when a statute enumerates the persons or things to be affected by its provisions, there is an implied exclusion of others"). But the list of entities enumerated in the definition of "state agency" includes any "agency of the state" without defining "agency of the state." Because the plain and ordinary meaning of "agency of the state" does not necessarily include or exclude an association, the failure to further define "agency of the state" creates an ambiguity within the statute as to whether an association is included within the definition of "state agency."

The MJUA notes that the legislature enacted a statute in 1975 that established a system for naming state agencies. 1975 Minn. Laws ch. 271, § 2, at 743. That statute, which was amended by 1976 Minn. Laws ch. 149, § 3, at 414, and is now codified as Minn.Stat. § 15.012 (2012), provides that "[a] multimember state agency hereafter created [2] whose membership includes two or more appointed members shall be named" a board, a committee, a council, a legislative commission, an authority, or an advisory task force, depend-

---

2. 1975 Minn. Laws ch. 271, § 2, became effective July 1, 1975. 1975 Minn. Laws ch. 271, § 7, at 747.

ing on the agency's primary purpose, powers, membership, and period of existence.

The MJUA argues that if the legislature had intended the MJUA to be a state agency when it was created in 1986, the legislature would have named the MJUA according to the nomenclature for state agencies established in 1975 by Minn.Stat. § 15.012. The MJUA contends that by calling the MJUA an association, rather than using one of the names provided in section 15.012, the legislature showed that it did not intend to create a state agency.

We are not persuaded that simply calling the MJUA an association demonstrates legislative intent to create an entity that is not a state agency. The system for naming state agencies under Minn.Stat. § 15.012 assigns a specific name to an agency when the agency meets specific criteria. Because the MJUA does not meet any of the specified criteria, the names in Minn.Stat. § 15.012 do not apply to the MJUA. But the language of Minn. Stat. § 15.012 does not suggest that the statute is intended to establish a complete, comprehensive system for naming all state agencies created after 1975. Other names could be used for state agencies that do not meet the criteria in section 15.012. Therefore, the legislature's use of the word "association" when it named the MJUA does not demonstrate that the MJUA is not a state agency.

Respondent argues that instead of relying on a general statutory scheme for defining "agency of the state," the Minnesota Supreme Court has addressed the common meaning of the term. In . addressing whether the University of Minnesota is a public body subject to the open meeting law, the supreme court stated that "[i]n common understanding, 'public body' is possibly the broadest expression for the category of government entities that perform functions for the public benefit" and that when used to describe the University of Minnesota, the terms "public body," "state institution," and "agency of the state" convey the same meaning. *Star Tribune Co. v. Univ. of Minn. Bd. of Regents,* 683 N.W.2d 274, 280 (Minn.2004). Respondent contends that, consistent with *Bd. of Regents,* this court should construe "agency of the state" as the equivalent of "public body," which means that an agency of the state is an entity that performs functions for the public benefit.

But in *Bd. of Regents,* the regents did not contend that the University of Minnesota is not a public body. *Id.* "Rather, they argue[d] that the Open Meeting Law does not apply to the Regents because the legislature did not expressly name the Regents as an entity subject to the requirements of the law." *Id.* at 280–81. Consequently, there was no need for the supreme court to define either "public body" or "agency of the state," and there is no basis for us to conclude that in *Bd. of Regents,* the supreme court defined "agency of the state" as an entity that performs functions for the public benefit. Instead, the supreme court merely recognized that the term "public body" is broad enough to include the University of Minnesota.

Like "public body" with respect to the University in *Bd. of Regents,* the term "agency of the state" is broad enough to include the MJUA. But, unlike the regents, the MJUA contends that it is not a state agency. Thus, we must do more than determine whether "agency of the state" could include the MJUA; we must determine whether the MJUA is a state agency. Because we are unable to answer this question by analyzing the language of the MGDPA, we will instead consider the legislature's intent when it created the MJUA, as the supreme court did in *S. Minn. Municipal Power Agency v. Boyne,* 578 N.W.2d 362 (Minn.1998).

In that case, the supreme court considered whether the Southern Minnesota Municipal Power Agency (SMMPA) was subject to the MGDPA. 578 N.W.2d at 362–63. The SMMPA was "a municipal power agency that was formed in 1977 by the joint action of 18 cities in southern Minnesota pursuant to Minn.Stat. §§ 453.51–.62 (1996) ('enabling legislation')." *Id.* at 363. By statute, the SMMPA was "a municipal corporation and a political subdivision of the state which [was] deemed to be performing an essential governmental function." *Id.* Because the SMMPA was a political subdivision, the data it possessed were within the plain meaning of "government data" under the MGDPA. *Id.* at 364. Nevertheless, the supreme court concluded that the SMMPA was not subject to the MGDPA because the enabling legislation under which the SMMPA was created allowed "municipal power agencies to manage their property and affairs in the same manner as a private corporation pursuant to their bylaws." *Id.* at 366. The basis for the supreme court's conclusion was the legislature's intent when it enabled the creation of the SMMPA.

■ The legislation that created the MJUA does not explicitly state whether the MJUA is a state agency. "When the words of a law are not explicit, the intention of the legislature may be ascertained by considering, among other matters ... the former law, if any, including other laws upon the same or similar subjects." Minn. Stat. § 645.16(5) (2012); *see also Harris v. Cnty. of Hennepin,* 679 N.W.2d 728, 732 (Minn.2004) (when words of statute are not explicit, we may look to other statutes upon the same or similar subjects); *State v. Lucas,* 589 N.W.2d 91, 94 (Minn.1999) (stating that "[t]he doctrine of in pari materia is a tool of statutory interpretation that allows two statutes with common purposes and subject matter to be construed together to determine the meaning of ambiguous statutory language.").

Before it created the MJUA, the legislature, in 1976, enacted a statute that created "a comprehensive health association with membership consisting of all insurers, self insurers, fraternals and health maintenance organizations licensed or authorized to do business in this state." 1976 Minn. Laws ch. 296, art. 1, § 10, at 1096. The 1976 enactment, which is codified at Minn. Stat. § 62E.10 (2012), was similar to the enactment that created the MJUA. In addition to specifying the membership of the Comprehensive Health Association (CHA), the legislation provided for a board of directors of the CHA "made up of seven individuals selected by participating members, subject to approval by the commissioner [of insurance]"[3] and required members to "maintain their membership in the association as a condition of doing business in this state." *Id.,* subd. 2. The legislation also required the association to "submit bylaws and operating rules to the commissioner [of insurance] for approval." *Id.,* subd. 3. Finally, the legislation required the CHA to offer policies through its comprehensive health insurance plan that provide required minimum benefits to persons who had been rejected for coverage by at least two association members. *Id.* §§ 12, at 1099; 14, at 1100–01. Thus, the CHA was created to provide health insurance to people who were unable to obtain coverage from individual insurers in much the same way that the MJUA was created to provide casualty and liability insurance to people unable to obtain insurance through ordinary methods.

---

3. In 1983, the responsibilities of the commissioner of insurance were transferred to the commissioner of commerce. 1983 Minn. Laws ch. 289, §§ 114, at 1307, 119, at 1309–10.

The substantial similarities between the purposes for creating the CHA and the MJUA are significant because the legislation that created the CHA specifically provided that "[a]ll meetings of the association, its board, and any committees of the association shall comply with the provisions of Minnesota Statutes, Section 471.705." *Id.* § 10, subd. 4, at 1096–97. In 1976, "Minnesota Statutes, Section 471.705" was the Minnesota Open Meeting Law, which stated that "[e]xcept as otherwise expressly provided by statute, *all meetings,* including executive sessions, *of any state agency,* board, commission or department when required or permitted by law to transact public business in a meeting, ... *shall be open to the public.*" Minn.Stat. § 471.705, subd. 1 (1976) (emphasis added).

If the legislature intended the CHA to be a state agency, it would have been superfluous to specifically require that the CHA "shall" comply with the open meeting law. The open meeting law already required that all meetings of any state agency shall be open to the public, which means that if the CHA was a state agency, its meetings were required to be open to the public. Thus, requiring the CHA to comply with the open meeting law demonstrates that the legislature did not intend the CHA to be a state agency. *See Amaral v. St. Cloud Hosp.,* 598 N.W.2d 379, 384 (Minn.1999) (stating that under basic canons of statutory construction "[w]henever it is possible, no word, phrase, or sentence should be deemed superfluous, void, or insignificant").

Also, in 1990, the legislature amended the MGDPA to provide that "[t]he Minnesota comprehensive health association is considered a state agency for purposes of chapter 13."[4] 1990 Minn. Laws ch. 523, § 1, at 1342 (now codified as Minn.Stat. § 13.719, subd. 1(b) (2012)). If the legisla-

ture had intended the CHA to be a state agency when the CHA was created in 1976, it would have been superfluous for the legislature to amend the MGDPA 14 years later to provide that the CHA is considered a state agency for purposes of the MGDPA. Furthermore, the fact that the 1990 legislation specifically states that the CHA is considered a state agency *for purposes of* the MGDPA indicates that the CHA is not a state agency for other purposes, which, in turn, indicates that the legislature did not intend the CHA to be a state agency.

■ Because the statutes that created the CHA and the MJUA have the common purpose of providing insurance coverage to people who are otherwise unable to obtain coverage and both statutes provide coverage through associations of all insurers doing business in the state, the two statutes may be construed together to determine the meaning of ambiguous statutory language. The statute that created the MJUA is ambiguous because it does not state whether the legislature intended the MJUA to be a state agency. But the 1976 enactment that created the CHA demonstrates that the legislature did not intend the CHA to be a state agency, and the 1990 enactment that amended the 1976 enactment reaffirmed this legislative intent. Because the statute that created the CHA and the statute that created the MJUA may be construed together to determine their meaning, we conclude that when the legislature created the MJUA, it did not intend to make the MJUA a state agency, just as it did not intend the CHA to be a state agency. Therefore, the MJUA is not a government entity that is subject to the MGDPA.

Because we have determined that the MJUA is not subject to the MGDPA, we

---

**4.** In 1990, chapter 13 of the Minnesota Statutes was the MGDPA.

affirm the district court's determination that respondent is not entitled to reasonable attorney fees or exemplary damages under Minn.Stat. § 13.08, subds. 1, 4(c).

## DECISION

Because the legislature did not intend to create a state agency when it created the MJUA, the MJUA is not a government entity subject to the MGDPA and respondent is not entitled to attorney fees or exemplary damages.

**Affirmed in part and reversed in part.**