STATE OF MINNESOTA

IN SUPREME COURT

A13-2112

Court of Appeals                                                                                      Lillehaug, J.


Minnesota Joint Underwriting Association,

                    Respondent,

vs.                                                                                    Filed: April 8, 2015
                                                                               Office of Appellate Courts
Star Tribune Media Company, LLC,

                    Appellant.

_____


Paula Duggan Vraa, Jennifer L. Young, Larson King, LLP, Saint Paul, Minnesota, for respondent.

John P. Borger, Leita Walker, Faegre Baker Daniels LLP, Minneapolis, Minnesota; and

Randy M. Lebedoff, Minneapolis, Minnesota, for appellant.

Mark R. Anfinson, Minneapolis, Minnesota, for amicus curiae Minnesota Newspaper Association.

_____

S Y L L A B U S

The Minnesota Joint Underwriting Association, an involuntary association of private insurers created by statute, is not a "state agency" subject to the Minnesota Government Data Practices Act.

Affirmed.

1

## O P I N I O N

LILLEHAUG, Justice.

A Star Tribune reporter submitted a request for data to the Minnesota Joint Underwriting Association ("MJUA"). In response, MJUA sought a favorable advisory opinion from the Commissioner of the Department of Administration on whether MJUA is a "state agency" subject to the Minnesota Government Data Practices Act ("MGDPA"). The Commissioner declined MJUA's request for an opinion. MJUA then sought declaratory relief in Ramsey County District Court. The court granted the Star Tribune's motion for partial judgment on the pleadings, holding that MJUA is a state agency. The court of appeals reversed in part, holding that MJUA is not a state agency. We granted review on that issue. Because we hold that MJUA is not a state agency subject to the MGDPA, we affirm the court of appeals.

I.

MJUA was created by the Legislature to provide insurance for "any person or entity unable to obtain insurance through ordinary methods," so long as the insurance is either "required by statute, ordinance, or otherwise required by law," or "necessary to earn a livelihood or conduct a business and serves a public purpose, including, but not limited to, liquor liability." Minn. Stat. § 62I.02, subd. 1 (2014). MJUA is specifically authorized to provide insurance coverage to "day care providers, foster parents, foster homes, developmental achievement centers, group homes, and rehabilitation facilities for mentally, emotionally, or physically disabled persons." *Id*. MJUA may also provide medical malpractice insurance to physicians, hospitals, and health care providers. Minn.

2

Stat. § 62F.04, subd. 1 (2014). MJUA has the power to underwrite and issue policies, adjust and pay losses, conduct risk management and loss prevention services, assume reinsurance from its members, and cede reinsurance. Minn. Stat. § 62I.04 (2014).

As a condition to obtaining and retaining a license to write insurance, all insurers "authorized to write property and casualty insurance and personal injury liability insurance" in Minnesota must be members of MJUA. Minn. Stat. § 62I.02, subd. 1. A majority of MJUA's board members are appointed by the Commissioner of Commerce, while the rest are elected by MJUA members. Minn. Stat. § 62I.02, subd. 2 (2014). Half of the appointed members are "public members," *id*., meaning that they neither hold an occupation nor have a material financial interest in the relevant insurance industries, Minn. Stat. § 214.02 (2014). The other appointed members are representatives of groups "to whom coverage has been extended" by MJUA. Minn. Stat. § 62I.02, subd. 2.

MJUA is primarily financed by policyholder premiums. MJUA members are responsible for losses and expenses beyond those financed by the premiums. Minn. Stat. § 62I.07 (2014). The statute does not provide for the State to assume any financial obligation.

On January 4, 2013, a reporter from the Star Tribune submitted a request for data to MJUA. The Star Tribune sought summary data on the number of providers covered by the MJUA "down to the county level, broken down by the classes covered by the MJUA." The Star Tribune identified the following classes: physicians and other health care providers; nursing homes; foster care providers; garagekeepers; truth-in-housing inspectors; and annual, seasonal, event, and single day liquor providers.

3

In response, MJUA sought a written advisory opinion from the Commissioner of the Department of Administration on whether MJUA was subject to the MGDPA. The Commissioner declined to issue an advisory opinion, citing two previous advisory opinions that, in the Commissioner's view, resolved the question against MJUA's position.

The Star Tribune then renewed its request and sought additional data, including the names and addresses of MJUA policyholders that are not individuals and any data submitted to the Minnesota Department of Commerce by MJUA since 2010. In response, MJUA commenced a lawsuit for declaratory relief. MJUA sought a declaration that it was not a "government entity" subject to the MGDPA. The Star Tribune filed an answer and a counterclaim, seeking an order compelling MJUA to comply with the MGDPA and pay exemplary damages for its "willful violation" of the law.

MJUA moved to dismiss the Star Tribune's counterclaim and for judgment on the pleadings, arguing that it is not subject to the MGDPA. The Star Tribune also filed a motion for partial judgment on the pleadings, arguing that MJUA is subject to the MGDPA.

The district court granted the Star Tribune's motion in part and ordered MJUA to comply with the MGDPA. The court held that MJUA was subject to the MGDPA for two reasons: (1) the definition of "state agency" in the MGDPA is broad; and (2) a majority of MJUA's directors are appointed by the Commissioner of Commerce, "thus allowing for state voting control of the entity." The district court declined to award

4

attorneys' fees, costs, and a civil penalty to the Star Tribune, however, because the controversy appeared "to be founded in good faith."

MJUA successfully moved the district court for entry of judgment and for a stay of enforcement pending appeal. MJUA then appealed to the court of appeals. The Star Tribune cross-appealed, challenging the district court's decision not to grant judgment on the pleadings on its counterclaim.

The court of appeals reversed in part. *Minn. Joint Underwriting Ass'n v. Star Tribune Media Co., LLC*, 849 N.W.2d 421 (Minn. App. 2014). The court of appeals held that MJUA is not a government entity subject to the MGDPA.[1] *Id*. at 426. The court of appeals first rejected MJUA's argument that it is not a state agency because it is an "association," a classification not specifically included in the definition of "state agency." *Id*. at 423. The court determined that because the definition of "state agency" includes "agency of the state," which is not defined, the statute is ambiguous as to whether an "association" could be a "state agency." *Id*. The court then examined a similar entity: the Comprehensive Health Association, which provided health insurance for people with pre-existing conditions. *Id*. at 425-26. That association's enacting statute expressly subjected it to the Open Meeting Law. *Id*. at 426. The court held that if "the legislature intended the CHA to be a state agency, it would have been superfluous to specifically require that the CHA 'shall' comply with the open meeting law." *Id*. Because of the

---

[1]    The court of appeals also affirmed the district court's denial of the Star Tribune's request for damages and fees. *Minn. Joint Underwriting Ass'n*, 849 N.W.2d at 426-27.

5

similarities between the two associations, the court of appeals concluded that the Legislature did not intend to treat MJUA as a state agency. *Id.*

We granted the Star Tribune's petition for review on the issue of whether MJUA is subject to the MGDPA.

II.

Under the MGDPA, all "government data collected, created, received, maintained or disseminated by a *government entity* shall be public unless classified by statute, or temporary classification pursuant to section 13.06, or federal law, as nonpublic or protected nonpublic, or with respect to data on individuals, as private or confidential." Minn. Stat. § 13.03, subd. 1 (2014) (emphasis added). A person who makes a request to the "responsible authority" of the government entity must be permitted to "inspect and copy public government data at reasonable times and places." Minn. Stat. § 13.03, subd. 3(a) (2014).

The MGDPA defines "government entity" as "a state agency, statewide system, or political subdivision." Minn. Stat. § 13.02, subd. 7a (2014). In turn, "state agency" is defined as "the state, the University of Minnesota, and any office, officer, department, division, bureau, board, commission, authority, district or agency of the state." Minn. Stat. § 13.02, subd. 17 (2014).

We have discussed the definition of "government entity" in the MGDPA on two occasions. First, in *Southern Minnesota Municipal Power Agency v. Boyne*, we held that a municipal power agency was not subject to the MGDPA and Minnesota's Open Meeting Law. 578 N.W.2d 362, 366 (Minn. 1998). Analyzing the enabling legislation,

6

we found persuasive the fact that municipal power agencies had the authority to manage their property and affairs "in the same manner as a private corporation pursuant to their bylaws." *Id.* Second, in *Star Tribune Co. v. University of Minnesota Board of Regents*, we held that the University of Minnesota Board of Regents was a "state agency" because the statute specifically included "the University of Minnesota." 683 N.W.2d 274, 279 (Minn. 2004).

Neither case offers particular guidance on the question before us. But, as was true in each case, whether a particular entity is a "government entity" subject to the MGDPA is a question of law subject to de novo review. *Bd. of Regents*, 683 N.W.2d at 279; *Boyne*, 578 N.W.2d at 364; *see also Navarre v. S. Wash. Cnty. Schs.*, 652 N.W.2d 9, 22 (Minn. 2002).

Applying the definition of "government entity," MJUA is clearly not a political subdivision or a statewide system. *See* Minn. Stat. § 13.02, subd. 11 (2014) (defining "political subdivision"); Minn. Stat. § 13.02, subd. 18 (2014) (defining "statewide system"). This dispute turns on whether MJUA is a "state agency."

Applying the definition of "state agency" in section 13.02, subdivision 17, MJUA is not itself the State or the University of Minnesota. Nor is it a state office, officer, department, division, bureau, board, commission, authority, or district. The only question that remains is whether MJUA is an "agency."

We hold that MJUA, clearly and unambiguously, is not a state agency. MJUA is legally organized as an involuntary association of private insurers. *See* Minn. Stat. § 62I.02, subd. 1. According to the insurance code, an association is an "organized body

7

of people who have some interest in common." Minn. Stat. § 60A.02, subd. 1a (2014). By definition, an "association" is not a legal entity separate from the persons who compose it. *Black's Law Dictionary* 132 (8th ed. 2014). Accordingly, while the MJUA was created by state statute, it is not part of the State; it is an organization consisting of private insurers.

Thus understood, it is not surprising that the term "association" is not among the entities listed in the MGDPA's definition of "state agency."[2] Nor is "association" listed in Minn. Stat. § 15.012 (2014), which controls the naming of state agencies.[3]

Beyond its name and form of organization, MJUA does not have the typical indicia of a state agency. MJUA is financed entirely by its members and policyholders, not by the State. Minn. Stat. § 62I.07. No statute obligates the State to pay MJUA's debts. Nor are MJUA's employees employed by the State. They may participate in the State's benefits plans, but only at the option of the MJUA board. Minn. Stat. § 62I.121 (2014). And there is nothing outside of chapter 62I giving MJUA the power to bind the State.

---

[2] The Legislature has created multiple insurance associations, including the Insurance Guaranty Association, Minn. Stat. §§ 60C.01-.22 (2014); the Life and Health Guaranty Association, Minn. Stat. §§ 61B.18-.32 (2014); the Comprehensive Health Association, Minn. Stat. §§ 62E.01-.19 (2014); the Minnesota FAIR Plan, Minn. Stat. §§ 65A.31-.43 (2014); the Minnesota Automobile Insurance Plan, Minn. Stat. §§ 65B.01-.12 (2014); and the Minnesota Workers' Compensation Reinsurance Association, Minn. Stat. §§ 79.34-.40 (2014). Only the Comprehensive Health Association is expressly subject to the MGDPA. Minn. Stat. § 13.719, subd. 1(b) (2014) (stating that the association is "considered a state agency for purposes of this chapter").

[3] State agencies are to be designated as departments, boards, councils, commissions, committees, or task forces. *See* Minn. Stat. §§ 15.01-.014 (2014).

8

The Star Tribune would have us interpret the term "state agency" to mean any state-level entity created by the State that performs functions for the public benefit. The Star Tribune argues that we so held in *State ex rel. Univ. of Minn. v. Chase*, 175 Minn. 259, 220 N.W. 951 (1928), decided more than half a century before the MGDPA was enacted. In *Chase*, the Star Tribune asserts, we held that "the 'ordinary and functional sense' of the term 'agency of the state' was 'everything in the way of . . . [an] institution used as a means to any end of state government.' "

The Star Tribune reads *Chase* too broadly. In that case, we interpreted a statute conferring power to a State commission to " 'supervise and control' expenditures by all 'departments, and agencies of the state government *and of the institutions under their control*.' " *Id*. at 262, 220 N.W. at 952 (emphasis added). Because the statutory grant of power included "institutions under [the government's] control," we reasoned that the "obvious intention is to include everything in the way of department or institution used as a means to any end of state government." *Id*. The MGDPA contains no such language, and *Chase* thus provides no guidance for defining "state agency" under the MGDPA.

The Star Tribune is correct that the State exercises considerable control over MJUA. For example, the Commissioner of Commerce appoints eight of the 15 members of MJUA's board of directors. Minn. Stat. § 62I.02, subd. 2. But only four are public members, and there is nothing in the statute to the effect that the directors, however appointed, owe any fiduciary duty to the State, rather than to the association itself.

The Commissioner also has power over MJUA's "plan of operation." Minn. Stat. § 62I.05 (2014). But the Commissioner has similar power over organizations that are

9

indisputably not state agencies. *See, e.g.*, Minn. Stat. § 62C.06, subd. 1 (2014) (requiring Nonprofit Health Service Plan Corporations to have their bylaws approved by the Commissioner); Minn. Stat. § 60A.29, subd. 6 (2014) (same for trust funds established under the Nonprofit Risk Indemnification Trust Act); Minn. Stat. § 64B.11, subd. 2 (2014) (same for amendments to Fraternal Benefit Societies' bylaws). Thus, the level of control granted to the Commissioner over MJUA does not turn the association into a state agency.

Finally, the Star Tribune urges us to defer to advisory opinions issued by the Commissioner of the Minnesota Department of Administration that MJUA is a state agency subject to the MGDPA. *See* Op. Minn. Dep't Admin. No. 96-005 (Jan. 25, 1996); Op. Minn. Dep't Admin. No. 04-071 (Nov. 3, 2004). Minnesota Statutes § 13.072, subdivision 2, states that such opinions "must be given deference by a court or other tribunal in a proceeding involving the data." Minn. Stat. § 13.072, subd. 2 (2014). But an advisory opinion is entitled to no deference when the statute is unambiguous. *See Schwanke v. Minn. Dep't of Admin.*, 851 N.W.2d 591, 594 n.1 (Minn. 2014); *Navarre*, 652 N.W.2d at 23 n.5; *Beck v. Groe*, 245 Minn. 28, 43, 70 N.W.2d 886, 897 (1955). As we do not consider the statute ambiguous, we have no occasion to consider the Commissioner's opinions.

In sum, although MJUA was created by state statute, it is not a state agency. It is an involuntary association of insurance company members providing coverage in the highly-regulated insurance market.

10

For the foregoing reasons, we affirm the court of appeals.

Affirmed.